1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KAVIN MAURICE RHODES,

                Plaintiff,

      vs.

GIGI GORDON, ESQ., et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No. CV 12-2863-JGB (DTB)

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

      This Report and Recommendation is submitted to the Honorable Jesus G. Bernal, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

      Plaintiff, a California state prisoner, filed a pro se civil rights Complaint, pursuant to 42 U.S.C. § 1983 on April 9, 2012.  Named as defendants in the Complaint were Attorneys GiGi Gordon ("Gordon"), Ralph J. Novotney ("Novotney"), Brentford Ferriera ("Ferreira"), Harvey Sherman ("Sherman"), Jess Gonzales ("Gonzales"), Cesey Lilienfeld ("Lilienfield"), Micheal P. Judge ("Judge"), Ralph R. Rios ("Rios"); the Honorable Sam Ohta ("Ohta"); Cristina Colon ("Colon");

1

Dane Dauphine ("Dauphine"), Assistant Chief Trial Counsel; and P. Eng ("Eng"), Deputy Trial Counsel.[1]  The gravamen of plaintiff's claims was that the defendants engaged in a conspiracy to deprive him of post-conviction discovery in state court.

On April 12, 2012, after screening the Complaint in accordance with 28 U.S.C. § 1915(e)(2), the Court found that it suffered from various deficiencies and dismissed it with leave to amend.  On May 4, 2012, plaintiff filed a First Amended Complaint ("FAC") herein.  Named as defendants in the FAC were Gordon, Novotney, Ohta, Ferreira, Sherman, Gonzales, Lilienfield, Judge, Rios, Colon, Dauphine, Eng, Sergeant Epperson ("Epperson"), and Officers Hernandez ("Hernandez") and Marin ("Marin").  The gravamen of plaintiff's claims in the FAC appeared to be the same as that of the Complaint.  On May 9, 2012, the Court ordered the FAC to be served on defendants.

Thereafter, several defendants filed motions to dismiss the FAC.  However, prior to ruling on these motions, plaintiff filed a "Request for Leave to File a Supplemental Pleading," which the Court granted on October 12, 2012.  The Clerk was directed to file the proposed Second Amended Complaint ("SAC"), which was lodged with the Court on September 17, 2012, and the Court ordered defendants to file a response to the SAC.  Named as defendants in the SAC are Gordon, Novotney, Ohta, Ferreira, Sherman, Gonzales, Lilienfield, Judge, Rios, Colon, Dauphine, Eng, Epperson, Hernandez, Marin, Clerk of the Superior Court Gloria Barreras ("Barreras"), and Official Court Reporter Georgette L. Rodarte ("Rodarte").  The gravamen of plaintiff's claims in the SAC appear to be essentially the same as that of the Complaint and FAC.

On October 26, 2012, Ohta filed a Motion to Dismiss ("Ohta MTD") on the grounds that the Court lacks subject matter jurisdiction, the SAC fails to allege

---

[1]      Defendants note the correct spelling of the following defendants' names: "Gigi Gordon," "Brentford Ferreira," "Casey Lilienfield," and "Michael P. Judge."

sufficient facts to state a cognizable legal theory, Ohta is entitled to absolute immunity, and plaintiff lacks Article III standing to sue Ohta. On the same date, the State Bar defendants Eng and Dauphine filed a Motion to Dismiss ("State Bar MTD"), on the grounds that the SAC is jurisdictionally barred and fails to state a claim upon which relief can be granted. Also, on the same date, prison official defendants Marin and Epperson filed a Motion to Dismiss ("Prison Officials MTD"), on the grounds that the Court lacks subject matter jurisdiction, plaintiff lacks standing to seek injunctive relief, and plaintiff fails to state a claim upon which relief can be granted. On October 31, 2012, Ferreira, Sherman, Lilienfield, and Judge filed a Motion to Dismiss ("Attorney MTD") on the grounds that plaintiff fails to state a claim upon which relief can be granted and the claims are legally deficient because of various applicable immunities.

On November 8, 2012, Novotney filed a Motion to Dismiss ("Novotney MTD"), on the grounds that plaintiff fails to state a claim upon which relief can be granted, the claims are barred by the Rooker-Feldman doctrine, and the SAC fails to state a case or controversy. Also, on the same date, the Estate of Gigi Gordon filed a "Motion of Specially Appearing Defendant to Quash Service of Summons" ("Motion to Quash"), on the ground that no effective service was made pursuant to Fed. R. Civ. P. 4.

On November 19, 2012, Gonzales filed a Motion to Dismiss ("Gonzales MTD"), on the grounds of lack of subject matter jurisdiction, failure to comply with Fed. R. Civ. P. 8, and failure to state a claim upon which relief can be granted. On December 13, 2012, plaintiff filed an Opposition to the Prison Officials MTD ("Opp. Prison Officials MTD"). After one extension of time, on December 14, 2012, plaintiff filed an Opposition to the Attorney MTD. On the same date, plaintiff also filed an Opposition to the Gonzales MTD and an Opposition to the State Bar MTD. On January 3, 2013, defendants Rios and Colon filed a Motion to Dismiss ("Rios/Colon MTD"), on the grounds of lack of subject matter jurisdiction, failure to

1  comply with Fed. R. Civ. P. 8, and failure to state a claim upon which relief can be
2  granted.    After one extension of time, on January 18, 2013, plaintiff filed an
3  Opposition to the Ohta MTD.    After one extension of time, on January 22, 2013,
4  plaintiff filed an Opposition to the Novotney MTD ("Opp. Novotney MTD").   On
5  January 23, 2013, plaintiff filed an Opposition to the Motion to Quash.   After one
6  extension of time, on February 25, 2013, plaintiff filed an Opposition to the
7  Rios/Colon MTD.   On June 6, 2013, plaintiff filed Supplemental Authorities in
8  support of his Opposition to the Attorney MTD.

9      Thus, this matter is now ready for decision.   For the reasons discussed below,
10 the Court recommends that the Motions be granted and that plaintiff be granted leave
11 to amend certain claims, as described hereinafter.

12

13                          **STANDARD OF REVIEW**

14     A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds
15 for federal subject matter jurisdiction.   "Subject-matter jurisdiction" "refers to a
16 tribunal's 'power to hear a case,' a matter that 'can never be forfeited or waived.'"
17 Union Pac. R.R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of
18 Adjustment, Cent. Region, 558 U.S. 67, 81, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009)
19 (citations omitted).   The Court may "hear evidence regarding jurisdiction" and
20 "resolv[e] factual disputes where necessary."   Robinson v. United States, 586 F.3d
21 683, 685 (9th Cir. 2009) (citation omitted, alteration in original).   Plaintiff bears the
22 burden of establishing subject matter jurisdiction.   See id.; Thornhill Publ'g Co. v.
23 Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979); see also Kokkonen v.
24 Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391
25 (1994).
26 / / /
27 / / /
28 / / /

4

1    A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of a statement
2 of claim for relief.  A complaint may be dismissed as a matter of law for failure to
3 state a claim for two reasons: (1) Lack of a cognizable legal theory; or (2) insufficient
4 facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d
5 696, 699 (9th Cir. 1990) (as amended).[2]  In determining whether the complaint states
6 a claim on which relief may be granted, its allegations of material fact must be taken
7 as true and construed in the light most favorable to plaintiffs.  See Love v. United
8 States, 915 F.2d 1242, 1245 (9th Cir. 1990) (as amended); see also Lazy Y Ranch
9 Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  "[T]he tenet that a court must
10 accept as true all of the allegations contained in a complaint is inapplicable to legal
11 conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d
12 868 (2009).  Further, since plaintiff is appearing pro se, the Court must construe the
13 allegations of the complaint liberally.  Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct.
14 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338,
15 342 (9th Cir. 2010) (as amended).  However, "a liberal interpretation of a civil rights
16 complaint may not supply essential elements of the claim that were not initially pled."
17 Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting
18 Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).
19    Moreover, with respect to plaintiff's pleading burden, the Supreme Court has
20 held that:

21       [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment]
22       to relief" requires more than labels and conclusions, and a formulaic

23

24       [2]    The Court notes that Balistreri has been overruled by Bell Atl. Corp. v.
25 Twombly, 550 U.S. 544, 562-63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), to the
26 extent that it followed the rule that, "[a] complaint should not be dismissed under
27 Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of
28 facts in support of his claim which would entitle him to relief.'" 901 F.2d at 699
(citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

1       recitation of the elements of a cause of action will not do. . . . Factual

2       allegations must be enough to raise a right to relief above the speculative

3       level . . . on the assumption that all the allegations in the complaint are

4       true (even if doubtful in fact).

5

6  <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted and alteration in original).  In

7  other words, the allegations must be plausible on the face of the complaint.  <u>See</u> <u>Iqbal</u>,

8  556 U.S. at 678.  The Supreme Court has held that:

9       The plausibility standard is not akin to a "probability requirement," but

10       it asks for more than a sheer possibility that a defendant has acted

11       unlawfully.  Where a complaint pleads facts that are "merely consistent

12       with" a defendant's liability, it "stops short of the line between

13       possibility and plausibility of 'entitlement to relief.'"

14

15  <u>Id.</u> (citations omitted); <u>see also</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir.

16  2009) ("for a complaint to survive a motion to dismiss, the non-conclusory 'factual

17  content,' and reasonable inferences from that content, must be plausibly suggestive

18  of a claim entitling the plaintiff to relief" (citing <u>Iqbal</u>, 556 U.S. at 678)).

19

20                  **REQUESTS FOR JUDICIAL NOTICE**

21       Preliminarily, the Court must consider the parties' Requests for Judicial Notice

22  ("RJN").  On October 26, 2012, Ohta filed a RJN ("Ohta RJN") in support of his

23  Motion to Dismiss, in which he requests the Court to take judicial notice of various

24  pleadings and orders from <u>People v. Rhodes</u>, Los Angeles County Superior Court,

25  Case No. A968415 ("Case No. A968415").  Additionally, pursuant to the Court's

26  June 24, 2013 Minute Order, Ohta filed a Supplemental Request for Judicial Notice

27  ("Ohta Supp. RJN") on July 1, 2013, seeking judicial notice of the Reporter's

28  Transcript from June 22, 2012, in Case No. A968415.  Novotney also filed a RJN in

1    support of his Motion to Dismiss, in which he also requests that the Court take

2    judicial notice of various pleadings and orders from Case No. A968415.

3        On December 13, 2012, plaintiff filed a RJN ("Pl. RJN 1") in support of his

4    Opposition to the Prison Officials MTD, in which he requests the Court to take

5    judicial notice of: (1) His petition for writ of mandate filed in the California Court of

6    Appeal; (2) the Court of Appeal's denial of plaintiff's petition for writ of mandate in

7    Case No. B216030; (3) the Court of Appeal's denial of plaintiff's petition for writ of

8    mandate in Case No. B217749; (4) the California Supreme Court's denial of

9    plaintiff's Petition for Review in Case No. S173380; (5) plaintiff's screened-out

10   medical appeals dated March 9, 2011; and (6) various articles purportedly regarding

11   Judge Smith.

12       Plaintiff filed another RJN ("Pl. RJN 2") on January 18, 2013 in support of his

13   Opposition to the Ohta MTD.  Plaintiff requests that the Court take judicial notice of:

14   (1) Various pleadings and an order from Case No. A968415; (2) a petition for writ of

15   mandate filed in the California Court of Appeal; (3) the California Court of Appeal's

16   denial of plaintiff's petition for writ of mandate in Case No. B216036; (4) the

17   California Court of Appeal's denial of plaintiff's petition for writ of mandate in Case

18   No. B217749; (5) the California Supreme Court's denial of plaintiff's petition for

19   review in Case No. S173380; (6) a letter from Lilienfield to plaintiff dated May 14,

20   2009; (7) plaintiff's legal mail logs; (8) the reporter's transcript from January 21,

21   2011 in Case No. A968415; (9) letters from Novotney to plaintiff; and (10) various

22   articles regarding Judge Smith.

23       On January 22, 2013, plaintiff filed a third RJN, in which he requests that the

24   Court take judicial notice of various documents that have previously been submitted

25   for judicial notice.

26       The Court may take judicial notice of the existence of court filings and another

27   court's orders.  See Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking

28   judicial notice of opinion and briefs filed in another proceeding); United States ex rel.

7

1   Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.

2   1992) (courts "may take notice of proceedings in other courts, both within and

3   without the federal judicial system, if those proceedings have a direct relation to

4   matters at issue" (citation omitted)).  As such, the Court takes judicial notice of the

5   court filings, orders, and reporter's transcripts from plaintiff's other actions, including

6   in Case No. A968415.

7          Federal Rule of Evidence 201 also allows a court to take judicial notice of facts

8   "capable of accurate and ready determination by resort to sources whose accuracy

9   cannot reasonably be questioned." A court may take judicial notice of "matters of

10  public record." Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012);

11  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

12  With respect to plaintiff's screened-out administrative appeals and plaintiff's legal

13  mail logs from Kern Valley State Prison, even assuming that such records are matters

14  of public record, the Court cannot take judice notice under Rule 201 of any further

15  inferences regarding the documents, such as whether the contents contained in such

16  documents are accurate and true. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th

17  Cir. 2001).  As such, while the Court will take judicial notice of the fact of these

18  documents' existence, the Court declines to take judicial notice of the facts contained

19  in such documents.

20         Similarly, with respect to the articles, although a court may take judicial notice

21  of such articles as evidence of "what was in the public realm at the time," it may not

22  do so as evidence that "the contents of those articles [a]re in fact true." Von Saher

23  v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (as

24  amended).  Here, because plaintiff intends to use them for the truth of the contents

25  therein, the Court denies plaintiff's request to take judicial notice of these documents.

26         Finally, the Court declines to take judicial notice of the various letters sent to

27  plaintiff by defendants.  These letters are not proper subjects for judicial notice.

28  "Judicial notice is reserved for matters 'generally known within the territorial

1    jurisdiction of the [ ] court' or 'capable of accurate and ready determination by resort
2    to sources whose accuracy cannot reasonably be questioned.'"  Jespersen v. Harrah's
3    Operating Co., Inc., 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc) (quoting Fed. R.
4    Evid. 201).   The matters alleged in the letters are not matters generally known
5    throughout the Central District of California and plaintiff essentially asserts in his
6    SAC that the authors of the letters are not sources who accuracy cannot reasonably
7    be questioned.  See id.  Accordingly, the Court denies plaintiff's request to take
8    judicial notice of these documents.  See N.D. ex rel. Parents Acting as Guardians Ad
9    Litem v. Haw. Dep't of Educ., 600 F.3d 1104, 1113 n. 7 (9th Cir. 2010); Reusser v.
10   Wachovia Bank, N.A., 525 F.3d 855, 858 n. 3 (9th Cir. 2008) (declining to take
11   judicial notice because the accuracy of the declaration was subject to reasonable
12   dispute).

13

14                    **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

15           As best the Court can glean from the allegations of the SAC, plaintiff appears
16   to be alleging that defendants conspired against him to deprive him of post-conviction
17   discovery he purportedly needs in support of a petition for writ of habeas corpus.  In
18   particular, plaintiff alleges that on or about February 15, 2009, he learned that his
19   name "had been spotted by a fellow prisoner" "as having been attached to some sort
20   of document attached to the 1989-90 Los Angeles County Grand Jury Report," a
21   report which, according to plaintiff, concerned an investigation into the use of
22   jailhouse informants in criminal cases in Los Angeles County. (SAC at 7.) As such,
23   plaintiff allegedly submitted a pre-habeas corpus discovery motion ("first discovery
24   motion") to the Los Angeles County Superior Court purportedly pursuant to Cal.
25   Penal Code § 1054.9, inquiring whether the District Attorney's Office had any
26   documentary evidence that its witness in his underlying criminal prosecution, Hyron
27   Tucker ("Tucker") had received any sort of inducement for his testimony against
28   plaintiff in plaintiff's 1989 criminal jury trial and whether the Los Angeles County

                                          9

Public Defender's Office was aware of any such benefits at the time "that it pretended to represent [p]laintiff." (SAC at 7-8.) This motion was filed with the Los Angeles County Superior Court on February 24, 2009. (Ohta RJN, Exh. 1.) It appears that this discovery motion was transferred to Judge Ohta in the Los Angeles County Superior Court on July 14, 2009. (Ohta RJN, Exh. 2.) The Minute Order transferring this motion reflected that plaintiff was provided notice of this transfer. (Id.)

Nevertheless, plaintiff alleges in the SAC that the Los Angeles County Superior Court did not acknowledge receipt of plaintiff's first discovery motion and therefore, plaintiff filed a petition for writ of mandate in the California Court of Appeal on May 13, 2009. (SAC at 8; see also Pl. RJN 1, Exh. 1.) This petition was denied on May 19, 2009. (Pl. RJN 1, Exh. 2.)[3] Plaintiff then sought review in the California Supreme Court, which was denied on July 8, 2009. (SAC at 8; Pl. RJN 1, Exh. 4.)

Thereafter, plaintiff appears to allege that he filed several additional petitions for writ of mandate to the California Court of Appeal to demonstrate that he did file his first discovery motion on or about February 15, 2009. (SAC at 8; see also Pl. RJN 1, Exh. 3.)[4] On May 14, 2009, plaintiff received a letter from Lilienfield of the Public Defender's Office, stating that plaintiff's first discovery motion had been sent to the "court," and which had, in turn, been forwarded to the Public Defender's Office by Gordon, an attorney from the Post Conviction Assistance Center. (SAC at 8.) Plaintiff alleges that he does not know how Gordon would have gotten possession of this motion. (Id.) Plaintiff alleges that he was then prompted to file another petition

---

[3]     Plaintiff alleges in the SAC that this petition was denied on August 19, 2009. (SAC at 8.)

[4]     The Court of Appeal noted that the Los Angeles County Superior Court's records for Case No. A968415 did not show any documents filed by plaintiff since 1988, but the Court notes that this appears to be contradicted by the judicially-noticed documents from Case No. A968415 reflecting otherwise.

1   for writ of mandate in the Court of Appeal in an attempt to have his first discovery

2   motion processed.  (Id.)

3       Meanwhile, plaintiff filed several "State Bar Complaints" against Gordon,

4   Lilienfield, Judge, and Sherman alleging that these attorneys were acting in collusion

5   with court personnel in a conspiracy to intercept and refuse to process plaintiff's first

6   discovery motion.  (SAC at 9.)  Plaintiff alleges that these defendants conspired

7   against him because of the information he sought in his first discovery motion.  (Id.)

8   The State Bar defendants allegedly denied plaintiff's complaints and plaintiff

9   submitted a request for review.  (Id.)  He also notified the State Bar that he intended

10  to sue Gordon for conspiring to obstruct justice in violation of RICO, and would also

11  name the Chief Trial Counsel of the State Bar for refusing to inquire of Gordon as to

12  how she came into possession of the first discovery motion.  (Id.)  Thereafter, the

13  State Bar contacted the Superior Court, and on or about July 23, 2009, plaintiff was

14  informed by the Superior Court that his first discovery motion would be filed.  (Id.)

15  Up to that time, plaintiff alleges that the Superior Court allegedly continued to

16  maintain that it had not received plaintiff's first discovery motion.  (Id.)

17      On or about October 29, 2009, plaintiff alleges that he was notified in writing

18  by Gordon that Ferreira told her that Gordon had been appointed by Ohta.  (SAC at

19  9-10.)  Plaintiff allegedly requested Gordon to produce an order from the Superior

20  Court to substantiate her appointment.  (SAC at 10.)  Gordon responded in writing

21  on January 26, 2010, stating that she did not receive a formal appointment by the

22  court, and that she was not in court when she was appointed.  (Id.)  Plaintiff alleges

23  that this "ruse" was confirmed by Ohta in a letter dated March 1, 2012.  (Id.)  Plaintiff

24  allegedly continued to "interrogate" Gordon regarding how she came into possession

25  of plaintiff's first discovery motion.  (Id.)  In response, on November 25, 2009,

26  Gordon began forwarding letters trying to explain how she came into possession of

27  the first discovery motion, which plaintiff appears to allege are false.  (Id.)  Among

28  these letters was one, dated July 1, 2010, in which Gordon purportedly explained to

11

1  plaintiff that there was no legal process for the courts to answer his question
2  regarding whether Judge Smith and Officer Smith (alleged to be participants in his
3  criminal trial) were related.  (SAC at 12.)

4       Thereafter, plaintiff suggested to Gordon that she file a discovery motion
5  pursuant to Cal. Penal Code § 832.8, Pitchess v. Superior Court, 11 Cal. 3d 531, 113
6  Cal. Rptr. 897 (1974), superseded by statute as stated in City of San Jose v. Superior
7  Court, 5 Cal. 4th 47, 19 Cal. Rptr. 2d 73 (1993), and Hurd v. Superior Court, 144 Cal.
8  App. 4th 1100, 50 Cal. Rptr. 3d 893 (2007), in order to probe the personnel files of
9  Officer Smith and to determine if he has a familial relationship to Judge Smith.  (SAC
10 at 12.)  At first, Gordon allegedly refused, but later asked plaintiff to send his trial
11 transcripts.  (Id.)  On April 12, 2010, Gordon sent plaintiff a letter claiming that she
12 had not received the transcripts sent to her by plaintiff, and thereafter, allegedly
13 refused to file the motion. (SAC at 12-13.)  Plaintiff filed a second discovery motion
14 in pro se ("pro se Pitchess motion") on November 18, 2010. (Ohta RJN, Exh. 3.)[5]  On
15 November 19, 2010, the Superior Court ordered the Kern Valley State Prison
16 Litigation Coordinator to make plaintiff available for a telephonic conference on
17 December 9, 2010. (Ohta RJN, Exh. 4.)  On December 7, 2010, the Los Angeles
18 County Police Department Custodian of Records filed an Opposition to plaintiff's pro
19 se Pitchess motion. (Ohta RJN, Exh. 5.)  On December 9, 2010, the Superior Court
20 ordered the Kern Valley State Prison Litigation Coordinator to make plaintiff
21 available for a telephonic conference on January 21, 2011. (Ohta RJN, Exh. 6.)  A
22 hearing was held on January 21, 2011, at which plaintiff appeared by telephone, and
23 Novotney appeared on behalf of plaintiff. (SAC at 13; Ohta RJN, Exh. 7.)  At the
24 hearing, the Superior Court inquired whether plaintiff wanted to go forward with his

25
26
27      [5]    Plaintiff alleges in the SAC that he filed the motion on or about
   December 19, 2010.  (SAC at 13.)  The motion was signed on November 1, 2010.
28 (Ohta RJN, Exh. 3.)

1  pro se Pitchess motion, or withdraw that motion and wait for Gordon to file a motion

2  on his behalf.  (Pl. RJN 2, Exh. 11 at 2.)  Novotney explained that the "main

3  stumbling block" to Gordon's preparing and filing a Pitchess motion was her lack of

4  access to reporter's transcripts, and that she was in the process of obtaining them.

5  (Id.)  The Superior Court indicated that it was prepared to rule on plaintiff's pro se

6  Pitchess motion, but that the decision as to how plaintiff would like to proceed was

7  up to him. (Id. at 3.)  Plaintiff stated on the record that he "would really like to have

8  counsel's involvement, if possible."  (Id.)  As such, the Superior Court withdrew

9  plaintiff's pro se Pitchess motion.  (Id.)  Novotney raised the issue regarding the

10  familial relationship of Officer Smith and the Superior Court continued that issue.

11  (Id. at 3-5.)  The Minute Order from the hearing confirms that plaintiff's pro se

12  Pitchess motion was withdrawn and that Gordon would re-file the motion on

13  plaintiff's behalf. (Ohta RJN, Exh. 7.)

14      Plaintiff further alleges that on February 16, 2011, Hernandez and Marin

15  appeared at plaintiff's cell claiming to be conducting a random cell search, and

16  allegedly without provocation, beat plaintiff, and planted an inmate manufactured

17  weapon on him for the sole purpose of throwing plaintiff in the hole to confiscate all

18  of his legal documents. (SAC at 13.)  At that time, Epperson appeared and stated:

19  "Those judges are going to make sure you die in prison," which plaintiff contends

20  was in reference to his discovery proceedings. (Id.)

21      Soon thereafter, plaintiff allegedly received a letter from Gordon, again

22  refusing to file plaintiff's Pitchess motion. (SAC at 13.)  In the interim, plaintiff

23  alleges that he was being denied access to his legal materials by the prison officials.

24  (Id.)

25      On or about March 18, 2011, plaintiff alleges that he filed, pro se, a motion for

26  a ruling on his pro se Pitchess motion as well as a supplemental discovery motion.

27  (SAC at 14.) Plaintiff also filed another petition for writ of mandate to the California

28  Court of Appeal asking that the Court of Appeal force a ruling on plaintiff's request

13

1  for a ruling and order Ohta to fire Gordon, which was denied. (Id.) Plaintiff then

2  filed a Petition for Review in the California Supreme Court, which was denied on

3  August 24, 2011. (Id.)

4       On or about May 25, 2011, plaintiff received a letter from Novotney, in which

5  Novotney claimed that because of health reasons Gordon would not be returning to

6  the Post Conviction Assistance Center, and as such, Novotney received plaintiff's

7  files and his request for a ruling on the pro se Pitchess motion. He also inquired

8  whether plaintiff would be willing to accept Novotney as counsel, to which plaintiff

9  responded that he did not want him to represent him. (SAC at 14.) Nevertheless,

10 plaintiff alleges that on May 31, 2011, Novotney forwarded a letter to plaintiff

11 informing plaintiff that Ohta had, *sua sponte*, appointed Novotney to file plaintiff's

12 Pitchess motion and indicating that he would be forwarding a declaration for plaintiff

13 to sign. (SAC at 14.) As of the date of the filing of the FAC, plaintiff alleges that

14 Novotney had not forwarded either the Pitchess motion nor the declaration. (SAC at

15 15.) Instead, on July 20, 2011, plaintiff alleges that Novotney forwarded to plaintiff

16 a box containing 4,300 pages of documents, asking plaintiff to review the documents,

17 and thereafter, inform Novotney of the claims plaintiff wished to raise on habeas

18 review so that he could determine how those claims would relate to the Pitchess

19 motion. (Id.) Plaintiff alleges that he responded to Novotney on August 10 and 11,

20 2011. (Id.) On September 13, 2011, Novotney responded, acknowledging receipt of

21 plaintiff's correspondence, but explained that he was still working on the Pitchess

22 motion as he was "working on it as well as motions and petitions in many other

23 cases." (Id.)

24       Meanwhile, on May 31, 2011, the Superior Court set a hearing for July 19,

25 2011 on one of plaintiff's discovery motions. (Ohta RJN, Exh. 8.) It appears that this

26 matter was taken off calendar on July 19, 2011. (Ohta RJN, Exh. 9.) Plaintiff alleges

27 that on August 1, 2011, Novotney informed plaintiff in writing that he had an off the

28 / / /

1  record conversation with Ohta, in which Ohta purportedly said that plaintiff's
2  Pitchess motion would be denied. (SAC at 15-16.)

3       On October 14, 2011, Novotney allegedly sent plaintiff a letter stating that the
4  prosecution witness Tucker testified at trial that he did not receive any inducement
5  for his testimony, but explained that " documentary evidence exist[s] that contradicts
6  that." (SAC at 16.) Novotney asked whether plaintiff had any documents that could
7  tie Officer Smith to Tucker for purposes of a Brady claim. (Id.) After being released
8  from the "hole" based on the "fabricated weapons possession charges," plaintiff
9  allegedly wrote Novotney a letter around November 10, 2011 stating that it was clear
10 that Novotney had no intention of filing plaintiff's Pitchess motion and that plaintiff
11 was contemplating his next move. (SAC at 16-17.) On November 19, 2011, the same
12 prison officials that allegedly "framed" plaintiff on February 16, 2011, informed him
13 that he was going to be placed back in the hole under the allegedly false pretense of
14 investigating plaintiff's claim that the weapon was planted on him, and thereafter, did
15 so through cell extraction with harsh chemical agents even though plaintiff alleges
16 that he was found not guilty of the fabricated rules violation report. (SAC at 17.)

17      On December 23, 2011, after again being released from segregated housing,
18 plaintiff alleges that Novotney informed him that the California Supreme Court had
19 recently granted review on one of his cases with respect to DNA testing, even though
20 plaintiff alleges that his trial did not concern any issues of DNA evidence. (SAC at
21 17.)

22      On or about January 11, 2012, plaintiff allegedly filed another complaint with
23 the State Bar of California against Gordon, Novotney, Ferreira, and Gonzales with
24 regard to their allegedly collusive conspiracy to prevent and to block plaintiff from
25 obtaining information out of Officer Smith's personnel file. (SAC at 19-20.) This
26 complaint was apparently denied on February 15, 2012. (SAC at 20.)

27      On or about February 24, 2012, Novotney allegedly explained to plaintiff that
28 he had failed to elaborate upon how Officer Smith's personnel file is material to any

15

claim cognizable on habeas corpus, although plaintiff contends this is contradicted
by his pro se Pitchess motion, and the declaration he filed in support thereof. (SAC
at 19.)

On February 28, 2012, plaintiff filed a petition for writ of habeas corpus in the
Los Angeles County Superior Court raising, *inter alia*, a claim regarding the
conspiracy alleged above. (SAC at 20.) On March 8, 2012, this claim was dismissed,
and the rest of the petition was transferred to Ohta for resolution. (Id.; Ohta RJN,
Exh. 10.)

Meanwhile, Novotney allegedly claimed on February 24, 2012, that he planned
to complete the Pitchess motion sometime in March 2012, but had not done so by the
filing of the FAC. (SAC at 21.) On March 7, 2012, the California Court of Appeal
denied another petition for writ of mandate requesting that Novotney be relieved as
counsel and to obtain a ruling on his pro se Pitchess motion. (Id.)

On April 9, 2012, plaintiff received a letter from the State Bar which appeared
to indicate that it was possibly considering reopening the complaint against
Novotney. (SAC at 21-22.) After notifying Novotney of the instant action, Novotney
responded that Ohta had scheduled a telephonic hearing on May 22, 2012. (SAC at
22.) Meanwhile, Novotney filed a Pitchess motion on May 22, 2012, which was
scheduled to be heard on May 22, 2012. (Pl. RJN 2, Exh. 12; SAC at 23.) At the
telephonic hearing on May 22, 2012, plaintiff alleges that Ohta indicated to plaintiff
that he would be allowed to be present in court if he agreed to withdraw the pro se
Pitchess motion and allow the court to proceed on the Pitchess motion filed by
Novotney. Plaintiff allegedly responded that he did not think that was wise because
he had not seen the motion filed by Novotney. (SAC at 23.) Ohta agreed to conduct
another telephonic hearing on June 15, 2012 to give Novotney time to forward his
Pitchess motion to plaintiff for review. (Id.) The Minute Order from the hearing
reflected that plaintiff agreed to continue the ruling on his petition for writ of habeas
corpus for 60 days to review the Pitchess motion. (Ohta RJN, Exh. 11.) Upon review

16

of the <u>Pitchess</u> motion filed by Novotney, plaintiff alleges that he noticed that the motion did not seek information regarding Officer Smith's familial relationship to Judge Smith (SAC at 23), in spite of the fact that the <u>Pitchess</u> motion did discuss the potential relationship between Judge Smith and Officer Smith.  (Pl. RJN 2, Exh. 12.) Plaintiff allegedly followed up with Novotney regarding this omission, but he did not respond.  (SAC at 24.)  At the hearing on June 15, 2012, plaintiff agreed to have Novotney represent him on the discovery motions and the <u>Pitchess</u> motion was set for hearing.  (Ohta RJN, Exh. 12.)  Plaintiff alleges that at this hearing, he again asked Novotney regarding the failure to include any requests for information regarding Officer Smith's familial relationship, but Novotney refused to answer the question. (SAC at 24.)  Plaintiff alleges that Ohta then reversed his earlier ruling and denied plaintiff's right to be present at the June 22, 2012 hearing.  (<u>Id.</u>)  On June 19, 2012, the Superior Court issued a Minute Order explaining that: (1) Plaintiff initially filed a discovery motion in <u>pro se</u>, along with a habeas petition; (2) the Post Conviction Assistance Center then filed a discovery motion on his behalf; (3) a hearing was held on May 22, 2012 to determine which motion to litigate and was continued to June 15, 2012 in order to give plaintiff an opportunity to review the motions; and (4) on June 15, 2012, plaintiff agreed to allow the Post Conviction Assistance Center to represent him on the discovery motion, but not the habeas petition and that a continuance of the habeas petition was necessary to first consider the discovery motion and then to provide plaintiff additional time to amend or change his habeas petition. (Ohta RJN, Exh. 13.)  Plaintiff alleges that he was not present at the June 22, 2012 hearing, even though the Minute Order reflects that he was present in court and represented by Novotney.  (SAC at 24-25; Ohta RJN, Exh. 14.)  At the June 22, 2012 hearing, the Superior Court denied plaintiff's pending discovery motion.  (Ohta RJN, Exh. 14; Ohta Supp. RJN, Exh. 15.)  At the hearing, Novotney explained, and Ohta confirmed, that two documents were filed on May 22, 2012.  The first request was a <u>Pitchess</u> / / /

17

1  motion and the second was a request for ruling, meant to "capture[] everything" that

2  plaintiff was requesting in discovery.  (Ohta Supp. RJN, Exh. 14 at 2-3.)

3       Based on the foregoing allegations, plaintiff asserts twenty-eight claims for

4  relief, alleging conspiracy to obstruct justice, mail fraud, denial of access to the

5  courts, violations of the First and Fourteenth Amendments, violation of the Hobbs

6  Act, violation of RICO, and denial of honest services.  Plaintiff seeks an order

7  compelling the Los Angeles County Superior Court and Ohta to provide the

8  information he requested in his discovery motions; $1,000,000 from Gordon,

9  Novotney, Ferreira, Sherman, Lilienfield, Gonzales, Rios, Eng, Dauphine, Colon,

10 Barreras, and Rodarte; treble damages; an injunction that prohibits the prison officials

11 from conspiring with the other defendants to beat plaintiff, frame him, and deny him

12 access to the law library and legal materials; and the forfeiture of the privilege to

13 practice law in the State of California as to any defendant found to have used their

14 license to practice law as a tool to defraud plaintiff of his legal rights.  (SAC at 35.)

15

16                              **DISCUSSION**

17 **I.   The Court lacks jurisdiction under the *Rooker-Feldman* doctrine to**

18      **consider plaintiff's claims challenging the underlying state court ruling on**

19      **his discovery motions.**

20      The Rooker-Feldman doctrine, derived from two United States Supreme Court

21 opinions, provides that federal district courts may exercise only original jurisdiction;

22 they may not exercise appellate jurisdiction over state court decisions.  See District

23 of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86, 103 S. Ct. 1303,

24 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.

25 Ct. 149, 68 L. Ed. 362 (1923); Bennett v. Yoshina, 140 F.3d 1218, 1223 (9th Cir.

26 1998) (as amended).  Instead, the proper court in which to obtain such review is the

27 United States Supreme Court.  See Feldman, 460 U.S. at 476, 486; Rooker, 263 U.S.

28 at 416.  The Rooker-Feldman doctrine applies not only to final state court orders and

judgments, but to interlocutory orders and non-final judgments issued by a state court as well. Doe & Associates Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001); Worldwide Church of God v. McNair, 805 F.2d 888, 893 n.3 (9th Cir. 1986).

The Rooker-Feldman doctrine applies even when the challenge to the state court decision involves federal constitutional issues. See Dubinka v. Judges of the Superior Court of the State of Cal., 23 F.3d 218, 221 (9th Cir. 1994); Worldwide Church of God, 805 F.2d at 891; see also Branson v. Nott, 62 F.3d 287, 290-92 (9th Cir. 1995) (involving procedural due process challenge to state court proceedings). A plaintiff may not avoid the Rooker-Feldman bar by styling his attack on the state court's ruling as a civil rights action. Branson, 62 F.3d at 291; Worldwide Church of God, 805 F.2d at 893 n.4.

In analyzing whether it has jurisdiction to hear a particular constitutional challenge, a federal district court first must determine whether plaintiff is attempting to bring a "forbidden de facto appeal." See Noel v. Hall, 341 F.3d 1148, 1163 (9th Cir. 2003). Such is the case "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." See id. at 1164. Further, if the court determines that plaintiff is attempting to bring a de facto appeal, plaintiff also is barred from litigating "any issues that are 'inextricably intertwined' with issues in that de facto appeal." See Kougasian v. TMSL, Inc., 359 F.3d 1136, 1142 (9th Cir. 2004); see also Feldman, 460 U.S. at 482 n.16 (stating that "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's [decision], then the District Court is in essence being called upon to review the state court decision"); Worldwide Church of God, 805 F.2d at 892. "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined," and the Rooker-Feldman doctrine requires that the federal court decline jurisdiction. See Doe & Associates Law Offices, 252 F.3d at 1030; see also Partington v. Gedan, 961 F.2d

852, 865 (9th Cir. 1992) (as amended) (applying the Rooker-Feldman doctrine where plaintiff sought to have the district court review a state court decision interpreting a state court rule).

Here, in the SAC, plaintiff challenges the Superior Court's denial of his discovery motions and asserts that various defendants, including the Superior Court judge, defense counsel, the prosecuting attorney, the court reporter, and the court clerk, are involved in a conspiracy to deprive him of documentary evidence that would support a petition for writ of habeas corpus challenging his underlying state court conviction from 1989.

Plaintiff's claims are substantially similar to those raised in Cooper v. Ramos, 704 F.3d 772 (9th Cir. 2012). In Cooper, the plaintiff filed a suit in federal district court challenging a state court's denial of his request to obtain additional DNA testing pursuant to a state statute. In his civil rights complaint, the plaintiff in Cooper alleged that he was the target of a long-running conspiracy to manipulate evidence and to prevent him from proving that he was framed. Id. at 775. On appeal, the Ninth Circuit agreed with the federal district court that all of plaintiff's claims were barred by the Rooker-Feldman doctrine. First, with respect to the plaintiff's challenge to the underlying decision, the plaintiff attacked the Superior Court's decision to deny his motion under Cal. Penal Code § 1405, complaining that by doing so, he was being deprived of his liberty and property interests without due process of the law. However, by challenging both the prosecutor's conduct and the state court's application of the statutory factors in his case, the plaintiff was essentially attacking the Superior Court judgment and, as such, his claim was barred by the Rooker-Feldman doctrine. Id. at 780-81.

The Cooper court also held that the plaintiff's conspiracy claims were barred by the Rooker-Feldman doctrine. The plaintiff in Cooper also alleged that defendants conspired to prevent him from obtaining DNA testing, and that they had also conspired during the underlying murder investigation and at trial. 704 F.3d at 781-

82.  In concluding that the federal district court lacked subject matter jurisdiction to consider these claims under the Rooker-Feldman doctrine, the court explained that such claims were "inextricably intertwined" with the Superior Court's order denying his request for DNA testing because the claims "succeed[] only to the extent that the state court wrongly decided the issues before it" and "federal relief can only be predicated upon a conviction that the state court was wrong." Id. at 782-83 (citation omitted).

Similarly, in the SAC, plaintiff challenges the particular outcome in the state court and seeks as a remedy relief from that state court's order.  Accordingly, the Rooker-Feldman doctrine bars his claims.  Cooper, 704 F.3d at 781.  Here, plaintiff requests an order directing Ohta and the Los Angeles County Superior Court to grant the discovery he requested in his motions filed in the Superior Court.  (SAC at 35.)  Although plaintiff alleges in portions of the SAC that the Superior Court has refused to rule on his discovery motions, the Minute Order from June 22, 2012, of which the Court has taken judicial notice, expressly reflects that plaintiff's discovery motions were ruled upon and denied on June 22, 2012, prior to the filing of the SAC.  (Ohta RJN, Exh. 14.)  Thus, plaintiff is essentially asking that this Court overturn the state court ruling denying his discovery motions, thereby making this action a de facto appeal of that order, which is precluded under the Rooker-Feldman doctrine.  Therefore, under the Rooker-Feldman doctrine, this Court lacks jurisdiction to consider plaintiff's claims that the Superior Court's order denied his federal rights.

The Rooker-Feldman doctrine also bars consideration of plaintiff's allegations that defendants conspired and abused the judicial process in order to deprive him of documentary evidence to support his petition for writ of habeas corpus, as these claims are "inextricably intertwined" with the ruling of the Superior Court on his discovery motions.  Again, by attacking the credibility of the recommendations, procedures, and evidence presented in that proceeding, plaintiff's SAC is a *de facto* appeal whereby he essentially asks this Court to review the merits of, and provide

21

relief from, the Superior Court's ruling.  As in <u>Cooper</u>, plaintiff's claims can only succeed to the extent that the state court wrongly decided the issues before it and, thus, plaintiff's claims are effectively "a prohibited appeal of the state-court judgment," barred by the <u>Rooker-Feldman</u> doctrine.  <u>Cooper</u>, 704 F.3d at 782-83.

Additionally, plaintiff further appears to allege mail fraud violations, again premised on the allegations of conspiracy to deprive him of documentary evidence. Not only is mail fraud, codified at 18 U.S.C. § 1341, not actionable under 42 U.S.C. § 1983, <u>see</u> <u>Wilcox v. First Interstate Bank of Or., N.A.</u>, 815 F.2d 522, 533 n. 1 (9th Cir.1987) (as amended) (Boochever, J., dissenting in part) (recognizing that no private right of action exists under 18 U.S.C. § 1341); <u>Wisdom v. First Midwest Bank, of Poplar Bluff</u>, 167 F.3d 402, 408 (8th Cir. 1999), such claims would also be barred by the <u>Rooker-Feldman</u> doctrine for same reasons set forth above.  A review of the allegations of mail fraud show that they, too, are "inextricably intertwined," and therefore barred.[6]

In his Oppositions to the Motions to Dismiss, plaintiff attempts to distinguish his case from those in which the <u>Rooker-Feldman</u> doctrine have been applied. Plaintiff appears to allege, *inter alia*, that the <u>Rooker-Feldman</u> doctrine is inapplicable in this action because he filed his original Complaint prior to a ruling on his discovery motions. (<u>See</u>, <u>e.g.</u>, Opp. Novotney MTD at 3, 21-22.)  In support of his contention, plaintiff relies on <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), which held that the <u>Rooker-Feldman</u> doctrine applies in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

---

[6]      To the extent plaintiff may be purporting to assert a RICO claim based on an alleged conspiracy, such a claim would be similarly barred under the <u>Rooker-Feldman</u> doctrine for the same reasons.

judgments." In <u>Exxon</u>, however, the Supreme Court focused on the issue of parallel state and federal litigation, explaining that the plaintiff had not "repaired to federal court to undue the Delaware judgment in its favor," but rather, filed suit in federal district court before any judgment "to protect itself in the event it lost in state court on grounds (such as statute of limitations) that might not preclude relief in the federal venue." <u>Id.</u> at 293-94.  [T]he pendency of an action in the state court is no bar to proceedings concerning the *same matter* in the Federal court having jurisdiction." <u>Id.</u> at 292 (citation omitted, emphasis added).  Here, there is no such parallel state and federal litigation.  To the contrary, plaintiff is specifically seeking relief *from* the state court's ruling.  The fact that plaintiff technically filed the original Complaint prior to complained-of state court ruling is not sufficient to "open the door for a federal district court to review the state court decisions." <u>Marciano v. White</u>, 431 F. App'x 611, 613 (9th Cir. 2011) (rejecting argument that <u>Rooker-Feldman</u> did not apply because the plaintiff filed his federal action before his state court appeals had concluded).[7]  "To hold otherwise would run counter to the doctrine's underlying principle that review of state court decisions must proceed through the state appellate procedure and then to the United States Supreme Court." <u>Id.</u>  In the present case, plaintiff is essentially seeking to overturn the underlying Superior Court ruling.  Thus, plaintiff is directly challenging the state court's proceedings, which is barred under the <u>Rooker-Feldman</u> doctrine.[8]

---

[7]     Cited for its persuasive value pursuant to Ninth Circuit Rule 36-3.

[8]     The Court also notes that to the extent plaintiff sought to interfere with the pending state judicial proceeding, it appears that his claims may be barred under the <u>Younger</u> abstention doctrine, providing that, under principles of comity and federalism, a federal court should not interfere with pending state court proceedings absent extraordinary circumstances.  <u>See</u> <u>generally</u> <u>Younger v. Harris</u>, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); <u>see</u> <u>also</u> <u>Ohio Civil Rights Comm'n v.</u>

(continued...)

Accordingly, the <u>Rooker-Feldman</u> doctrine bars subject matter jurisdiction over plaintiff's claims seeking to overturn the underlying state court order, alleging a conspiracy, abuse of process, mail fraud, and a RICO violation as it relates to the Superior Court's decision, and these claims should be dismissed without leave to amend. <u>Cooper</u>, 704 F.3d at 785.

**II.   Several of the named defendants are immune from suit.**

A.   <u>Defendant Ohta is entitled to absolute judicial immunity.</u>

Judges are entitled to absolute immunity "from civil liability for damages for their judicial acts." <u>Mullis v. U.S. Bankr. Court for the Dist. of Nev.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987). Judicial immunity is an absolute immunity from suit. <u>See</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Absolute judicial immunity applies not only to suits for damages, but also "to actions for declaratory, injunctive and other equitable relief." <u>Moore v. Brewster</u>, 96 F.3d 1240, 1244 (9th Cir. 1996).[9] Absolute judicial immunity "insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives . . . or when the exercise of judicial authority is flawed by the commission of grave procedural errors." <u>In re Castillo</u>, 297 F.3d 940, 947 (9th Cir. 2002) (as amended) (internal quotation marks and citations omitted); <u>see also</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9

_____

[8](...continued)
<u>Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 627, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986) (holding that <u>Younger</u> applies to civil proceedings in which important state interests are involved).

[9]   In 1996, Congress amended 42 U.S.C. § 1983 to explicitly provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

1   (1991) (per curiam); Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55
2   L. Ed. 2d 331 (1978).  "Judicial immunity applies 'however erroneous the act may
3   have been, and however injurious in its consequences it may have proved to the
4   plaintiff.'"  Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) (as
5   amended) (quoting Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S. Ct. 496, 88
6   L. Ed. 2d 507 (1985)).

7        A judge is protected if: (1) He performed a "judicial act" and (2) he did not act
8   in "clear absence of jurisdiction."  Moore, 96 F.3d at 1244 (quoting Stump, 435 U.S.
9   at 356-57).  An action taken by a judge in excess of his or her authority "cannot be
10  said to have been taken in the absence of jurisdiction."  Mireles, 502 U.S. at 13.

11       Here, the allegations against Ohta are based solely on his performance as a
12  judicial officer in ruling on plaintiff's discovery motions.  Plaintiff asserts that Ohta
13  violated his rights while presiding over plaintiff's discovery motions, including by
14  delaying a ruling on such motions.  As such, as framed by plaintiff's own allegations,
15  the actions at issue relate only to acts taken in Ohta's capacity as a Superior Court
16  judicial officer and plaintiff has not asserted any factual allegations of conduct by
17  Ohta that do not pertain to functions that are normally performed by a judge and that
18  do not fall within the responsibility of Ohta as a judicial officer.  Further, plaintiff's
19  conclusory allegations of conspiracy on the part of Ohta are insufficient to deprive
20  Ohta of absolute judicial immunity.  See Moore, 96 F.3d at 1244 ("Nor is judicial
21  immunity lost by allegations that a judge conspired with one party to rule against
22  another party: '[A] conspiracy between judge and [a party] to predetermine the
23  outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce
24  the immunity extended to judges . . . ." (quoting Ashelman, 793 F.2d at 1078)
25  (alterations in original)).

26       As such, not only are the claims against Ohta barred by the Rooker-Feldman
27  doctrine, Ohta is also entitled to absolute judicial immunity from all of plaintiff's
28  claims against him.

25

1        B.    Defendants Eng, Dauphine, and Barreras are entitled to absolute quasi-

2               judicial immunity.

3       Judicial immunity extends to non-judicial officials performing quasi-judicial

4 functions. See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999) ("Absolute

5 immunity extends to agency officials when they preside over hearings, initiate agency

6 adjudication, or otherwise perform functions analogous to judges and prosecutors.");

7 see also Demoran v. Witt, 781 F.2d 155, 156 (9th Cir. 1986) (as amended) ("Courts

8 have extended absolute judicial immunity from damage actions under 42 U.S.C. §

9 1983 not only to judges but also to officers whose functions bear a close association

10 to the judicial process."). "The Supreme Court has recognized that individuals, when

11 performing functions that are judicial in nature, or who have a sufficiently close

12 nexus to the adjudicative process, are entitled to a grant of absolute quasi-judicial

13 immunity." Castillo, 297 F.3d at 948 (citation omitted).

14       First, with respect to the State Bar defendants, Eng and Dauphine, they are

15 being sued based on their investigation and the subsequent denials of plaintiff's

16 complaints to the California State Bar alleging misconduct by various attorneys

17 involved in the underlying state court discovery matters. The Ninth Circuit has held,

18 however, that State Bar judges and prosecutors are entitled to quasi-judicial immunity

19 in their performance of functions similar to judges and prosecutors in a setting like

20 that of a court. Hirsh v. Justices of the Supreme Court of the State of Cal., 67 F.3d

21 708, 715 (9th Cir. 1995) (per curiam). Here, as plaintiff's claims against these

22 defendants are based solely on their review and evaluation of plaintiff's disciplinary

23 complaints, these defendants are entitled to quasi-judicial immunity.

24       Second, although plaintiff, to date, has not served Barreras, a Superior Court

25 clerk, the Court also concludes that this defendant is entitled to quasi-judicial

26 immunity. As long as the challenged activities are an integral part of the judicial

27 process and were not taken in clear absence of all jurisdiction, court clerks enjoy

28 absolute quasi-judicial immunity, regardless of whether the actions were done in

1   error.  See Mullis, 828 F.2d at 1390 (9th Cir.1987).  As such, quasi-judicial immunity

2   protects clerical administrative functions, including the filing of documents.  See id.;

3   see also Castillo, 297 F.3d at 952 (extending quasi-judicial immunity to "court clerks

4   and other non-judicial officers for purely administrative acts - acts which taken out

5   of context would appear ministerial, but when viewed in context are actually a part

6   of the judicial function").

7        Here, plaintiff's claim against Barreras is premised upon this defendant's

8   preparation of the court order denying plaintiff's discovery motions.  (SAC at 34.)

9   Barreras's actions in preparing the order, as well as in filing the same, were an

10  integral part of the judicial process, and plaintiff has not alleged otherwise.  As such,

11  Barreras is entitled to quasi-judicial immunity.

12       Based on the foregoing, Dauphine, Eng, and Barreras are entitled to quasi-

13  judicial immunity from all of plaintiff's claims against them.

14

15       C.    Defendant Ferreira is entitled to prosecutorial immunity.

16       The law is well established that prosecutors performing their official

17  prosecutorial functions are entitled to absolute immunity from federal civil rights

18  claims.  See, e.g., Van de Kamp v. Goldstein, 555 U.S. 335, 343, 129 S. Ct. 855, 172

19  L. Ed. 2d 706 (2009); Imbler v. Pachtman, 424 U.S. 409, 427, 96 S. Ct. 984, 47 L. Ed.

20  2d 128 (1976); Sykes v. State of Cal. (Dep't of Motor Vehicles), 497 F.2d 197, 200

21  (9th Cir. 1974).  This immunity applies even if it "does leave the genuinely wronged

22  defendant without civil redress against a prosecutor whose malicious or dishonest

23  action deprives him of liberty."  See Imbler, 424 U.S. at 427.  Moreover, the

24  immunity extends to all "acts undertaken by a prosecutor in preparing for the

25  initiation of judicial proceedings or for trial, and which occur in the course of his role

26  as an advocate for the State," see Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S.

27  Ct. 2606, 125 L. Ed. 2d 209 (1993), including actions post-trial.  Demery v.

28  Kupperman, 735 F.2d 1139, 1144-45 (9th Cir. 1984).  In Imbler, the Supreme Court

27

held that prosecutors were immune from claims that they had knowingly used false testimony at trial, had deliberately suppressed exculpatory evidence, and had prosecuted the defendant with knowledge that he had been "cleared" by a lie detector test. See Imbler, 424 U.S. at 416; see also, e.g., Burns v. Reed, 500 U.S. 478, 492, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991) (holding that the prosecutor's conduct in appearing in court in support of an application for a search warrant and in presenting evidence at that hearing was protected by absolute immunity); Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 781-82 (9th Cir. 2001) (holding that prosecutor's conduct in sending plaintiff a letter informing him that he had been charged with trespass and directing him to present himself at the police station for arrest and booking under the threat of a bench warrant was protected by absolute immunity). The Supreme Court also has held that prosecutors are immune even from "administrative" failures if they are directly connected with the conduct of a trial, including supervision and training on impeachment-related information and the creation of information management systems relating to such evidence. See Van de Kamp, 555 U.S. at 344. Even charges of malicious prosecution, use of perjured testimony, and concealment of exculpatory evidence will be dismissed on grounds of prosecutorial immunity. See Stevens v. Rifkin, 608 F. Supp. 710, 728 (N.D. Cal. 1984). Nor does it make any difference if the plaintiff is alleging that the prosecutors were engaged in a conspiracy to violate his civil rights. See Ashelman, 793 F.2d at 1078.

Here, all of the allegations against Ferreira appear to be based on his conduct as a state prosecutor opposing plaintiff's motions for post-trial discovery. The SAC alleges that Ferreira, in his capacity as a deputy district attorney, violated plaintiff's civil rights by claiming that he lost plaintiff's case files and withheld relevant evidence, in an attempt to cover-up for the fact that the District Attorney's Office and the Public Defender's Office had colluded to suppress evidence during plaintiff's underlying criminal trial. (SAC at 27-28.) Plaintiff further alleges that Ferreira's participation in the hearing on the discovery motions was contrived and pretextual,

28

1   done in response to plaintiff having notifying Novotney he intended to file a civil

2   rights action. (SAC at 34.) Accordingly, plaintiff's claims solely relate to Ferreira's

3   conduct while acting in a prosecutorial capacity and advocating for the State post-

4   trial. As such, plaintiff's claims against Ferreira are barred under the doctrine of

5   prosecutorial immunity and should be dismissed without leave to amend. See

6   Demery, 735 F.2d at 1144-45.[10]

7

8   **III.    The remaining allegations of the SAC are insufficient to state a federal**

9   **civil rights claim against any of the named defendants.**

10       Plaintiff's SAC contains some allegations against the prison official defendants

11  Epperson, Marin, and Hernandez that potentially do not fall within the confines of the

12  Rooker-Feldman doctrine as they appear to be based on conduct independent of the

13  Superior Court's ruling. However, as explained below, as currently pled, the

14  allegations of the SAC are insufficient to state a federal civil rights claim against

15  these defendants.

16       Plaintiff alleges that on February 16, 2011, Hernandez and Marin appeared at

17  plaintiff's cell claiming to be conducting a random cell search, and allegedly without

18  provocation, beat plaintiff, and planted an inmate-manufactured weapon on plaintiff

19  for the sole purpose of causing him to be incarcerated in segregated housing in order

20  to confiscate all of his legal documents. (SAC at 13.) Plaintiff alleges that Epperson

21  stated: "Those judges are going to make sure you die in prison," which plaintiff

22

23  _____

24       [10]    The Court finds that plaintiff's reliance on Goldstein v. City of Long

25  Beach, 715 F.3d 750 (9th Cir. 2013) is misplaced. Unlike the instant case, the
    allegations in Goldstein related to the district attorney's role as a administrative

26  policymaker in adopting and implementing internal policies and procedures related
    to the use of jailhouse informants. Here, as explained, plaintiff's allegations against

27  Ferreira relate to his role as a deputy district attorney acting on behalf of the State in

28  opposing plaintiff's discovery motions.

contends was in reference to his discovery proceedings. (Id.) Thereafter, after being released from segregated housing on the allegedly fabricated weapons possession charge on November 19, 2011, plaintiff was informed by the same prison officials that he was being placed back in segregated housing, "under the false pretense of investigating [p]laintiff's claim that that [sic] weapon had been planted on him[.]" (SAC at 16-17.) Plaintiff alleges that the prison officials then extracted him from his cell using harsh chemical agents, even though he had been found not guilty of the rules violation report, and placed him back in segregated housing. (SAC at 17.) As a result of the foregoing conduct, plaintiff purports to be raising a claim against Marin, Epperson, and Hernandez under the Hobbs Act, 18 U.S.C. § 1951. (SAC at 32-33.) He seeks injunctive relief only.

As an initial matter, plaintiff cannot raise a § 1983 claim based on the Hobbs Act, 18 U.S.C. § 1951. In order to seek redress under § 1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. Blessing v. Freestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997). No private cause of action exists for 18 U.S.C. § 1951.

In evaluating whether a statute creates a private right of action, the Court's focus is on whether Congress intended to create such a right. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 377-378, 102 S. Ct. 1825, 72 L. Ed. 2d 182 (1982). Where a "statute by its terms grants no private rights to any identifiable class," Touche Ross & Co. v.. Redington, 442 U.S. 560, 576, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979), it is not proper for the Court to imply such a right. The Hobbs Act is just such a criminal statute, containing no language suggesting it can provide a civil cause of action. Moreover, no court that has considered the issue has determined that the legislative history of the statute indicates that Congress intended to create a private cause of action. See Stanard v. Nygren, 658 F.3d 792, 794 (7th Cir. 2011) (noting that the Hobbs Act does not provide a private right of action); Wisdom, 167 F.3d at 408-409; WSB Elec. Co., Inc. v. Rank & File Comm. to Stop

the 2-Gate Sys., 103 F.R.D. 417, 419 (N.D. Cal. 1984). Accordingly, plaintiff's claim under the Hobbs Act must be dismissed.

However, based on the allegations of the SAC, it appears that plaintiff may also be attempting raise a claim for retaliation and therefore, the Court shall also address plaintiff's claim against the prison officials as such.

It is well settled that an action taken in retaliation for the exercise of a First Amendment right is actionable under § 1983. See Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009); Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). This includes the right to petition the government for redress of grievances. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989); see also Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim, 584 F.3d at 1269 ("It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances."); Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005) (as amended) ("Of fundamental import to prisoners are their First Amendment rights to file prison grievances." (citation omitted)).[11]  To state a viable claim for retaliation in violation of the First Amendment in the prison context, a plaintiff must show five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Brodheim, 584 F.3d at 1269 (quoting Rhodes, 408 F.3d at 567-68); see also Watison, 668 F.3d at 1114.

To satisfy the causation element, plaintiff must show that his constitutionally-protected conduct was a "substantial" or "motivating" factor for the alleged

---

[11]     Additionally, "[t]he right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances" and "[d]eliberate retaliation by state actors against an individual's exercise of this right is actionable under section 1983." Soranno's Gasco, 874 F.2d at 1314.

1  retaliatory action. See Brodheim, 584 F.3d at 1271.  Moreover, the plaintiff bears the

2  burden of pleading and proving the absence of legitimate correctional goals for the

3  conduct of which he complains. See Pratt, 65 F.3d at 806.  A plaintiff may do so "by

4  alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary

5  and capricious . . . or that they were 'unnecessary to the maintenance of order in the

6  institution.'"  Watison, 668 F.3d at 1114-15 (citations omitted).

7        Here, plaintiff vaguely contends that the prison officials conducted a random

8  cell search, beat plaintiff, planted a weapon on him, placed him in segregated

9  housing, and confiscated his legal materials "to prevent [him] from continuing on in

10  the discovery process before the Los Angeles Superior Court[.]"  (SAC at 13, 16-17,

11  32-33.)  These vague and conclusory allegations, however, do not raise an inference

12  that any constitutionally protected conduct was the motivating factor for any specific

13  retaliatory action.  Other than conclusory assertions, without any causal link, plaintiff

14  has not alleged specific facts supporting a claim that any of the prison official

15  defendants retaliated against him for filing his discovery motions with the Superior

16  Court.  Indeed, as plaintiff appears to concede, he was ultimately found not guilty of

17  the weapons charge.

18        Accordingly, even considering the allegations of the SAC as true, and

19  construing them in the light most favorable to plaintiff, the Court concludes that the

20  allegations of the SAC are insufficient to state a retaliation claim against the named

21  prison official defendants.

22        Although the Court is extremely dubious that plaintiff will be able to cure the

23  deficiencies of the SAC regarding this claim, because plaintiff is proceeding pro se,

24  the Court will afford plaintiff one more opportunity to cure the deficiencies of his

25  claim against Marin, Epperson, and Hernandez.  See Lucas v. Dep't of Corr., 66 F.3d

26  245, 248 (9th Cir 1995) (per curiam) ("Unless it is absolutely clear that no

27  amendment can cure the defect . . . a pro se litigant is entitled to notice of the

28  / / /

32

complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").[12]

---

[12]        Although plaintiff asserts that he is not raising an Eighth Amendment claim or due process claim based on the false weapons charge, his placement in segregated housing, and/or his alleged assault by the prison official defendants (Opp. Prison Officials MTD at 29-32), the Court briefly addresses these potential claims in an abundance of caution.  First, placement in segregated housing in and of itself generally does not implicate a protected liberty interest, Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003), or constitute a violation of the Eighth Amendment.  See Toussaint v. Yockey, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984) ("[A]n indeterminate sentence to punitive isolation does not without more constitute cruel and unusual punishment.").  Although the circumstances of a particular case may implicate due process if the confinement imposes an atypical and significant hardship, see, e.g., Wilkinson v. Austin, 545 U.S. 209, 222-24, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005), this is not such a case.  As currently pled, plaintiff has not alleged any particular hardship associated with his placement in segregated housing, let alone demonstrated that the conditions he experienced in segregation constituted a dramatic departure from those typically encountered by similar prisoners in segregation or that he was deprived of any basic human needs while in segregation.  Further, to the extent that plaintiff alleges that his placement in segregated housing resulted from a falsified disciplinary report, such an allegation is insufficient to state a due process claim.  A prisoner does not have a constitutional right to be free from falsified disciplinary reports.  See Hines, 108 F.3d at 268-69; Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Williams v. Foote, Case No. 08-2838-CJC (JTL), 2009 WL 1520029, at *7 (C.D. Cal. May 28, 2009).

        Finally, with respect to an excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (per curiam) (citation omitted).  Here, however, plaintiff's bare allegation that he was beaten, without any additional supporting facts, is not sufficient to state an excessive force claim.  Accordingly, the Court concludes that plaintiff has not sufficiently alleged any other claims for relief against any of the named prison official defendants.  Iqbal, 556 U.S. at 678.

**IV.     Plaintiff's service on defendants Gordon, Barreras, and Rodarte.**[13]

Finally, the Court addresses the service issues relating to Gordon, Barreras, and Rodarte.

**A.     Motion to Quash filed by the Estate of Gigi Gordon should be granted.**

As noted, the SAC named Gordon as a defendant.  Gordon died in January 2012, a few months before this action was filed.  (Declaration of Marcy Gordon filed in support of Motion to Quash, at ¶2.)  As such, because Gordon was already deceased at the time plaintiff filed this action in April 2012, plaintiff should have followed the procedures for suing Gordon's estate rather than attempting to sue and serve Gordon.  Plaintiff has not named Gordon's estate as a defendant, attempted to serve Gordon's representative or successor-in-interest, nor has he shown good cause for failing to do so.  Accordingly, the Court grants the Estate of Gigi Gordon's Motion to Quash, and dismisses Gordon from the action with prejudice.[14]  Further, since his claims against Gordon are barred by the Rooker-Feldman doctrine, leave to amend the SAC in order to name the Estate of Gigi Gordon would be futile.

/ / /

---

[13]     As explained in the Court's June 18, 2013 Order, the Court has granted plaintiff's request for limited discovery to obtain further information regarding the identity of defendant Hernandez for purposes of service.

[14]     It also appears that Fed. R. Civ. P. 25(a) is inapplicable and untimely in any case.  Under Rule 25(a), if a party dies and the claim is not extinguished, the court may order the substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative within 90 days after service of a statement noting the death.  If the motion is not made within the 90 days, the action against the decedent must be dismissed.  However, substitution under Rule 25 is not available when the death precedes the filing of the action.  Mizukami v. Buras, 419 F.2d 1319, 1320 (5th Cir. 1969) (per curiam); Charles Alan Wright et al., Federal Rules of Civl Procedure § 1951 (2013).

34

1          B.      The Court declines to extend the service deadline as to defendants
2    Barreras and Rodarte only.

3          Pursuant to Fed. R. Civ. P. 4(m), service of the summons and complaint had
4    to be accomplished on each named defendant within 120 days after the filing of the
5    complaint. In this matter, plaintiff initially named Barreras and Rodarte as defendants
6    in his SAC filed on October 12, 2012.   As such, the 120-day period expired on
7    February 9, 2013.

8          On October 18, 2012, the Court issued an Order Directing Service of Process
9    by the United States Marshal of the SAC on nine defendants, including Barreras and
10   Rodarte.    In the Order Re: Service of Second Amended Complaint also filed on
11   October 18, 2012, plaintiff was advised that no later than 30 days from the date of
12   that Order, he shall file a Notice of Submission indicating that all required documents
13   were submitted to the U.S. Marshal for service of the SAC and that failure to do so,
14   could result in the dismissal of the action without prejudice. On November 19, 2012,
15   plaintiff requested an extension of time because he had been unable to make the
16   required number of copies and requested an order directing prison officials to permit
17   plaintiff to access to a properly functioning copy machine.[15]  On November 29, 2012,
18   the Court granted plaintiff an extension of time to comply with the Court's Order,
19   extending the deadline to December 19, 2012, and otherwise denied plaintiff's
20   request for an order directing prison officials to permit plaintiff access to a properly
21   functioning copy machine.   On December 14, 2012, plaintiff filed a Notice of
22   Submission of Document to the U.S. Marshal indicating that he sent 9 copies of the
23   summons, USM-285 form, and the SAC to the U.S. Marshal's Service on December
24   10, 2012.

25         To date, the U.S. Marshal has not returned the summons for either Barreras or
26   Rodarte, nor has the Court received the Process Receipt and Return for either

27   _____
28        [15]    The Court notes that this Request did not mention service on Rodarte.

35

1   defendant.   Plaintiff has never filed any proof of service of the SAC on these

2   defendants, or purported to show good cause for his failure to timely serve these

3   defendants.   Plaintiff's pro se status does not excuse his failure to timely serve

4   defendants.  See Hon. William W. Schwarzer et al., Federal Civil Procedure Before

5   Trial § 5:298.1 (2013).

6       In Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988) (per curiam), the Ninth

7   Circuit cited the following factors as relevant to the Court's determination of whether

8   to dismiss an action for failure to prosecute: "(1) [T]he public's interest in expeditious

9   resolution of litigation; (2) the court's need to manage its docket; (3) the risk of

10  prejudice to the defendants; (4) the public policy favoring disposition of cases on

11  their merits and (5) the availability of less drastic sanctions." The SAC in this matter

12  was filed on October 12, 2012 and the initial 120-day period for service expired on

13  February 9, 2013. Plaintiff's time to provide the service package to the U.S. Marshal

14  was extended to December 19, 2012. Liberally construing the 120-day period from

15  December 19, 2012, service of the summons and the SAC had to be accomplished by

16  April 18, 2013. However, to date, service still has not been effectuated. Here, then,

17  the first and second Carey factors clearly militate in favor of dismissal of the

18  unserved defendants.

19      However, a party proceeding in forma pauperis is entitled to have the summons

20  and complaint served by the U.S. Marshal. See Fed. R. Civ. P. 4(c)(3). 28 U.S.C. §

21  1915(d) also provides that in cases in which a court authorizes a plaintiff to proceed

22  in forma pauperis "[t]he officers of the court shall issue and serve all process[.]"

23  Therefore, "an incarcerated pro se plaintiff proceeding in forma pauperis is entitled

24  to rely on the U.S. Marshal for service of the summons and complaint, and, having

25  provided the necessary information to help effectuate service, plaintiff should not be

26  penalized by having his or her action dismissed for failure to effect service where the

27  U.S. Marshal or the court clerk has failed to perform the duties required of each of

28  them . . . ." Puett v. Blandford, 912 F.2d 270, 275 (9th Cir. 1990) (as amended).

36

Here, plaintiff is an incarcerated pro se plaintiff, who is proceeding in forma pauperis.  Thus, after providing the necessary information and forms to the U.S. Marshals, he was entitled to rely on the U.S. Marshals Service to effectuate service. As such, it appears that the untimely service of these defendants may be based on circumstances outside of plaintiff's control.  As explained, plaintiff submitted a Notice of Submission on December 14, 2012, indicating that he provided nine summons packages to the U.S. Marshal.  Although it does not appear that plaintiff resubmitted the summons packages for these defendants or has otherwise inquired regarding the status of service on these defendants, given the early stages of this litigation, the Court finds that the fourth and fifth factors do not militate in favor of dismissal.

Thus, the service issue turns on the third factor.  In the present circumstances, the Court concludes that the third factor, the risk of prejudice to the defendant, militates in favor of dismissal.  As explained above, plaintiff's only claim against Barreras is barred by the Rooker-Feldman doctrine and/or quasi-judicial immunity, and as such, the Court recommends the dismissal of his claim against this defendant without leave to amend.  Similarly, plaintiff's sole claim against Barreras is barred under the Rooker-Feldman doctrine.  Therefore, it is unnecessary to provide additional time to serve either defendant with the SAC.

Accordingly, in light of the foregoing, and in consideration of the Carey factors, the Court concludes that there is no good cause for extending the service deadline as to Barreras and Rodarte.[16]

/ / /

/ / /

---

[16]    Because the Court is recommending the dismissal of plaintiff's SAC, the Court need not address defendants' remaining contentions in their motions to dismiss at this time.

# RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) Approving and accepting this Report and Recommendation; (2) granting the Ohta MTD, the State Bar MTD, the Prison Officials MTD, the Attorney MTD, the Novotney MTD, the Gonzales MTD, and the Rios/Colon MTD; (3) granting the Estate of Gigi Gordon's Motion to Quash; (4) dismissing plaintiff's federal civil rights claims alleged against Ohta, Ferreira, Dauphine, Eng, Barreras, Lilienfield, Judge, Rios, Colon, Sherman, Novotney, Gonzales, Rodarte and Gordon without leave to amend; (5) dismissing plaintiff's federal civil rights claims not challenging the underlying Superior Court discovery order, including those based on an alleged conspiracy, against Epperson, Marin, and Hernandez with leave to amend; and (6) ordering plaintiff, if he still desires to pursue this action, to file a Third Amended Complaint remedying the deficiencies discussed above within thirty (30) days of the date of the District Court's Order approving and accepting this Report and Recommendation.

DATED: July 16, 2013

THE HONORABLE DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in the Local Rules and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.